**Melvin Alexander PAYTON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38713.**

Court of Criminal Appeals of Texas.

Nov. 24, 1965.

Rex Emerson (Court appointed on appeal), Francis Williams, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, Allen L. Stilley and Gus J. Zgourides, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, death.

The proprietor of Carroll's Cafe testified that appellant, the man who was later killed (hereinafter referred to as the deceased) and another man were engaged in a game of pool at his cafe on the night in question and that at the conclusion of the game, which he had won, the deceased put his pool stick on a table together with his hat and announced that he was going to the "bathroom". Carroll testified that appellant shot at deceased twice as he was on his way to the rest room, that he caught hold of appellant from the rear and continued to struggle with him, but that he was unable to reach appellant's pistol or to prevent appellant from pursuing deceased into the rest room, where appellant fired a final shot into deceased while deceased had his hands

raised and was pleading with appellant not to shoot him. He stated that appellant instructed him to put down the telephone when he attempted to call for an ambulance and that appellant together with his wife left the cafe, commandeered an automobile from its owner at pistol point, and fled the scene. The witness got the license number and reported the same to the police.

The witness Spencer testified that he overheard appellant say to the third player that they would keep deceased from winning a game and would "break him", to which deceased replied, "Man, leave me alone, let's finish the game", which they did, and that deceased laid his "cue stick" down and headed toward the bathroom, whereupon appellant drew a pistol and fired twice in deceased's direction. He further stated that Carroll grabbed appellant and called to him for help, that he responded by grabbing appellant's left arm, but that when appellant pointed the pistol at him and told him to turn him loose, he did so. Spencer went to locate two policemen who normally walked that beat, but was unable to find them, and upon his return to the cafe he found deceased lying across the commode and saw appellant take a man's automobile at gun point.

William Lewis testified that it was his brother, Elmer, who was engaged in the game of pool and that he witnessed the first two shots and then fled to his automobile, but was unable to escape because appellant took his automobile away from him at pistol point. Elmer Williams gave practically the same testimony as had the other witnesses called by the State.

Deputy Sheriff Weispape of Washington County testified that the morning following the homicide he spotted appellant driving the automobile about which he had been notified and gave chase, that appellant abandoned the automobile and fled on foot, but that he was able to apprehend him and that he was "present along with the defendant and Deputy Mickey Walker when a weapon was recovered."

Deputy Walker testified that he arrived at the scene just as appellant had been apprehended, and that as a result of a conversation with appellant he found a pistol which appellant told him was the gun that was used in a murder in Houston. He identified the weapon introduced in evidence. At this juncture the jury was excused, and the Court heard further evidence from Walker and from appellant as to the recovery of the weapon and appellant's oral confession and made his finding as a matter of fact and of law that the oral confession was admissible, whereupon the State rested.

Appellant, testifying in his own behalf, stated that deceased had lost his temper over the game of pool, had walked away from the table and had reached in his pocket, whereupon he fired shots, neither of which hit deceased, and that the third or fatal shot was fired accidentally as he was "wrestling" with Carroll over the pistol. He denied that he had pointed his pistol at Spencer or at William Lewis. In answer to his own counsel's question, appellant stated that he told the arresting officer that he "used rifle bullets" in his pistol, but that it was unloaded at the time of his arrest, and that he told the officer that he "used the X on the bullets so that when I shoot targets you can square them off and that way you can tell at a distance just where you hit on a target."

Appellant called his common law wife, who testified that just prior to the shooting deceased had refused to pay appellant the money which her husband had won on a pool game, but that she did not witness the shooting.

It was established by medical testimony that deceased died as the result of a gun shot wound in his chest.

At a hearing on appellant's motion for new trial appellant's attorneys testified that after the trial they learned from appellant's mother that he had been treated for a mental condition at a Beaumont Hospital. At the hearing appellant's mother testified that she did not make such fact known to any-

one until after the jury's verdict, even though she knew that her son had been charged with murder. The records of the Beaumont hospital revealed that some 13 years prior to this trial appellant made some four out-patient visits for nervousness and headaches and had an EEG performed upon him. The careful trial court twice recessed the hearing on the motion, one such recess being in order to permit appellant's attorneys an opportunity to have a psychiatrist see appellant and to have the county consulting psychiatrist examine him.

Appellant's attorneys did have a psychiatrist see the appellant, but offered no testimony from him. On the other hand, Dr. Sher, the county consulting psychiatrist, testified that he had examined appellant during one of the recesses on the hearing and found that appellant's thinking was clear, concise and logical and gave no evidence of any thought disorder; he concluded that appellant was of sound mind at the time of trial and expressed the opinion that appellant was sane at the time of the homicide.

Appellant testified that he had been given a Section 208 discharge from the army because he had been caught committing a homosexual act with his first sergeant.

 Appellant's attorneys on appeal by brief and in argument contend that the officers' version of what appellant told them at the time of his arrest was not admissible because it was not found to be true. We have pointed out that he gave his own counsel practically the same testimony. Be this as it may, the holding of this Court in Whitaker v. State, 160 Tex.Cr.R. 271, 268 S.W.2d 172, clearly makes admissible statements made by appellant which lead to discovery of the whereabouts of the weapon used in the homicide.

We overrule appellant's contention that a new trial should be granted so that a jury might hear the testimony we have before us relating to appellant's sanity.

Finding the evidence sufficient to sustain the conviction and no reversible error appearing, the judgment is affirmed.