The **STATE OF TEXAS** and Dr. George
J. Beto, Director, Texas Department
of Corrections, Appellants,

v.

Melvin Alexander **PAYTON**, Appellee.

No. 24326.

United States Court of Appeals
Fifth Circuit.

Feb. 12, 1968.

Lonny F. Zwiener, Robert E. Owen, Asst. Attys. Gen., Austin, Tex., for appellants.

J. R. Ramsey, Houston, Tex., for appellee.

Before BROWN, Chief Judge, SIMPSON, Circuit Judge, and SUTTLE, District Judge.

SIMPSON, Circuit Judge:

We review on appeal a judgment of the District Court granting the Writ of Habeas Corpus upon the petition of Payton, a State prisoner under sentence of death following his conviction of murder in the first degree, discharging him from the custody of the respondent, Dr. Beto, without prejudice to the right of the State of Texas to retry petitioner upon the indictment within sixty days form the date of judgment or within sixty days of final decision on appeal in event of appeal. We conclude that the writ was improvidently granted, reverse the District Court and remand for dismissal by the lower court without prejudice to Payton's right to seek relief in the Texas court where he was originally tried and convicted.

The appellee (hereinafter Payton) was tried February 3, 1965, in the Criminal District Court No. 4 of Harris County, Texas, for murder with malice and pursuant to the jury's verdict was sentenced to death. On November 24, 1965, this conviction was affirmed by the Court of Criminal Appeals of Texas.[1] His application for Writ of Habeas Corpus to the Texas Court of Criminal Appeals was denied without hearing May 3, 1966. The Petition for Writ of Habeas Corpus to the United States District Court for the Southern District of Texas followed on May 9, 1966. After response to the petition by appellant a full plenary hearing was held on June 14, 1966, evidence was presented and argument of counsel heard. Post-hearing briefs were filed. Final judgment granting the Writ of Habeas Corpus was rendered October 27, 1966. The District Court filed a memorandum opinion which is unreported. State remedies available[2] at the time[3] were exhausted before the application for habeas was made to the court below. Indeed, Texas has not asserted the contrary, either by brief or upon oral argument. Despite this posture of the case, we conclude (Part II) that Payton should be required to pursue the presently available Texas post-conviction procedure. (See footnote 3, supra).

I.

The single question presented on this appeal is whether or not an oral

1. Reported at 396 S.W.2d 120 (1965).

2. Under the requirements of 28 U.S.C., Sec. 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

3. But see Article 11.07 of the Vernon's Ann. Texas Code of Criminal Procedure of 1965, as amended by SB 145, Acts of the 60th Legislature, p. 1734, effective August 28, 1967. See further the construction of this new statute by the Texas Court of Criminal Appeals (per Woodley, Presiding Judge) in Ex Parte Young, No. 40,775, decided September 14, 1967, 418 S.W.2d 824. Thereafter the Court of Criminal Appeals promulgated the following order on September 13, 1967:

"In re Post-Conviction Petitions for Writ of Habeas Corpus

1. After conviction in any felony case the procedure outlined in Art. 11.07 C.C.P. as amended by Senate Bill 145 enacted by the 60th Legislature (Acts 1967 at p. 1934) 'shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner.' [Art. 11.07 V.A.C.C. P.].

2. Petitions which have been presented to the Court of Criminal Appeals in which no action has been taken, other than those which reflect that such petition or one containing like sworn allegations of fact have been presented to the judge of the court where the felony conviction occurred, are denied without prejudice. See Ex parte Jack Young, No. 40,775, 418 S.W.2d 824. Sept. 14, 1967."

This procedure was not available to Payton at the time he sought post-conviction relief by his habeas application to the Texas Court of Criminal Appeals in May, 1966. For further discussion of these provisions see Part II of this opinion.

confession made by Payton at the time of his arrest was improperly admitted at his State trial in denial of his Fourteenth Amendment rights of due process and equal protection of the law. The District Court reached its conclusion, not on the basis that the oral confession was coerced, upon consideration of the "totality of circumstances",[4] but rather upon the narrow ground that Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), stands for the proposition that the failure to warn a suspect of his "absolute constitutional right to remain silent", regardless of any other circumstances, vitiates a confession later used against him in a criminal trial, as violative of Fifth Amendment rights enforced against the states by the Fourteenth Amendment.[5] As the quota-

---

4. Fikes v. State of Alabama, 352 U.S. 191, 197, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed. 2d 513 (1963).

5. We quote at length from the memorandum opinion below: "The court will first consider the petitioner's allegation that his constitutional rights were violated because he was not advised of his right to remain silent when interrogated by state authorities. As a result of this interrogation complained of by petitioner, an oral admission was elicited from him. This admission was later admitted into evidence by the trial court at petitioner's trial after it was found to be voluntary in a separate hearing.

"The record developed before the trial court indicates that the petitioner was not given any warnings by the arresting officers prior to his making an oral admission relating to a pistol found near the place of his arrest. See Statement of Facts, pages 109, 121, 122. The respondent urges that it was unnecessary to give any warnings to petitioner prior to his oral admission and cites Johnson v. New Jersey, 384 U.S. 719, [86 S.Ct. 1772, 16 L.Ed.2d 882] (1966), as authority.

"Johnson v. New Jersey, supra, deals with the retroactive application of Escobedo v. Illinois, 378 U.S. 478 [84 S.Ct. 1758] (1964), and Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966). The Johnson case holds that Escobedo affects only those cases in which the trial began after June 22, 1964, and Miranda affects only those cases in which the trial began after June 13, 1966. Petitioner's trial began February 3, 1965, thus, he may avail himself of the holding in Escobedo, but the holding in Miranda is not applicable to him.

"Escobedo v. Illinois, supra, states at pages 490–91 [84 S.Ct. 1758]:

'We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, *and the police have not effectively warned him of his absolute constitutional right to remain silent*, the accused has been denied "the Assistance of Counsel" * * * and * * * no statement elicited by the police during the interrogation may be used against him at a criminal trial.' (Emphasis added) "This court is of the opinion that the Escobedo case recognizes the constitutional right of a suspect to be warned of his right to remain silent. Justice Goldberg, in delivering the opinion in Escobedo, specifically stated that a suspect must be warned of his 'absolute constitutional right to remain silent' if any statement made by him is to be used in a criminal trial. Further recognition of the importance of advising the criminal accused of their right to remain silent is provided by the Supreme Court's discussion of Crooker v. California, 357 U.S. 433 [78 S.Ct. 1287, 2 L.Ed.2d 1448] (1958), in the Escobedo case at pages 491–492 [84 S.Ct. 1758].

"Miranda v. Arizona, supra, is not the original exposition of the duty of law enforcement authorities to warn a person being interrogated of his right to remain silent. Miranda broadens this principle as first set forth in Escobedo. In Escobedo, the Supreme Court held that after the investigation focuses on a particular suspect, any confession or admission made by the suspect must have been preceded by an effective warning informing the suspect of his right to remain silent if such confessions or admissions are to be admitted in a criminal trial. Miranda broadens this principle to the point where persons must be warned of their right to remain silent prior to any 'custodial interrogation' (which does not necessarily mean the investigation

tion (Footnote 5) from the District Court's memorandum indicates, Payton claimed other violations of constitutional rights arising from the trial which were not considered by the court below. Summarized, these were:

(1) Inflammatory arguments to the jury by the prosecutor;

(2) Denial of the right of confrontation by the acceptance of the testimony of the Harris County Medical Examiner as to the autopsy of the deceased rather than requiring the State to produce the physician who actually performed the autopsy;

(3) The exclusion of all prospective jurors who indicated scruples against the infliction of the death penalty;

(4) The denial of the motion for new trial on the grounds of newly discovered evidence relating to the petitioner's prior history of mental disorder;

(5) The receipt in evidence of the alleged weapon, a pistol found as a result of information supplied by a person not called as a witness, but identified by Payton in his oral statement at the time of arrest as the weapon used to commit the homicide;

(6) The reception in evidence of the oral statement prior to Payton being informed of his rights, including his right to remain silent as well as his right to counsel, and before the witness to the statement, a deputy sheriff, was allowed to be examined outside the presence of the jury to determine the admissibity of such statement, either as to law or as to its voluntary nature;

(7) Claimed deprivation of due process of law by the refusal of the trial court to provide Payton, an indigent person, the benefit of psychiatric evalua-tion by a physician other than one dependent upon the State for his salary (a county psychiatrist); and

(8) Other related and peripheral claims of violation of due process, some of which may have and others of which clearly do not have the constitutional import.

We reach the conclusion that the granting of the writ upon the narrow ground cited by the trial judge cannot be sustained. We reach this decision upon careful examination of the *Escobedo* opinion and upon close study of the interpretation of the *Escobedo* holding in later Supreme Court cases, specifically Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967).

■ We agree with the trial judge that this case, tried in February 1965 is governed by *Escobedo* but not by *Miranda*. Johnson v. State of New Jersey, supra.

First of all, the quotation from pages 490–491 of 378 U.S., 84 S.Ct. 1758 *Escobedo* (see Footnote 5) does not warrant the flat assertion that "Justice Goldberg, in delivering the opinion in *Escobedo*, specifically stated that a suspect must be warned of his 'absolute constitutional right to remain silent' if any statement made by him is to be used in a criminal trial." Actually, the reference in *Escobedo* to the "absolute constitutional right to remain silent" is coupled with the statement that the suspect after the inquiry focused upon him and he had been

has focused on the person being interrogated) if any confession or admission elicited as a result of such interrogation is to be introduced at a criminal trial.

"In the present case the petitioner was in custody when the admission was made, the investigation had focused on him, he was being interrogated by officers (see Statement of Facts, page 115), and he was not warned of his right to re-main silent. In light of the prior discussion of the Escobedo case, this court is of the opinion that the admission made by petitioner was not admissible at his trial.

"This renders unnecessary any discussion of the several other claimed violations of constitutional rights arising from the trial."

taken into police custody, had requested and been denied an opportunity to consult with his lawyer. The significant language is "the accused has been denied 'the Assistance of Counsel'". The reference to the Fifth Amendment right to remain silent is present, but present only as coupled with the holding that the Sixth Amendment right to the assistance of counsel was violated.

The validity of this reading is clarified by reference to the introductory paragraph of the Court's opinion as follows (page 479, of 378 U.S. at page 1759 of 84 S.Ct.):

"The critical question in this case is whether, under the circumstances, the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constitutes a denial of 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. 335, 342, [83 S.Ct. 792, 795, 9 L.Ed.2d 799,] and thereby renders inadmissible in a state criminal trial any incriminating statement elicited by the police during the interrogation."

■ From this, and from the concluding sentences at page 492 of 378 U.S., at page 1766 of 84 S.Ct. we conclude that *Escobedo* may not be construed as an enunciation of Fifth Amendment rights, its ambit being limited to rights arising under the Sixth Amendment. The concluding sentences referred to are as follows:

"Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' Spano v. [People of State of] New York, 360 U.S. 315, 327, [79 S.Ct. 1202, 3 L.Ed.2d 1265] (Stewart, J., concurring), by gathering information from witnesses and by other 'proper investigative efforts.' Haynes v. [State of] Washington, 373 U.S. 503, 519 [83 S.Ct. 1336, 10 L. Ed.2d 513]. *We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer.*" (Emphasis supplied)

In *Miranda*, on the other hand, the Court's opinion states in its introductory paragraph (384 U.S., at page 439, 86 S.Ct., at page 1609):

"More specifically, we deal with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation and the necessity for procedures which assure that the individual is accorded *his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself.*" (Emphasis added)

The *Miranda* opinion refers to the varying conclusions reached by state and federal courts in assessing the implications of *Escobedo*, the debate by legal scholars tracing its "ramifications and underpinnings", and continues:

"We granted certiorari in these cases, (citations omitted) in order further to explore some facets of the problems, thus exposed, of applying the privilege against self-incrimination to in-custody interrogation, and to give concrete constitutional guidelines for law enforcement agencies and courts to follow.

"We start here, as we did in *Escobedo*, with the premise that our holding is not an innovation in our jurisprudence, but is an application of principles long recognized and applied in other settings. We have undertaken a thorough re-examination of the *Escobedo* decision and the principles it announced, and we reaffirm it. That case was but an explication of basic rights that are enshrined in our Constitution —that 'No person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel'—rights which were put in jeopardy in that case

through official overbearing. These precious rights were fixed in our Constitution only after centuries of persecution and struggle. And in the words of Chief Justice Marshall, they were secured 'for ages to come, and * * * designed to approach immortality as nearly as human institutions can approach it,' Cohens v. [Commonwealth of] Virginia, 6 Wheat. 264, 387 [5 L.Ed. 257] (1821).''

At page 444, of 384 U.S., at page 1612 of 86 S.Ct., the *Miranda* court said:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4] [Footnote 4: this is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused.] As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right to silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

The *Miranda* court, after pointing out that Malloy v. Hogan, 378 U.S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964) (decided one week prior to *Escobedo*) squarely held the privilege (against self-incrimination) applicable to the States, held that the substantive standards underlying the privilege applied with full force to state court proceedings (pages 463 and 464 of 384 U.S., 86 S.Ct. 1602) and made the following comment (page 465 of 384 U.S. page 1623 of 86 S.Ct.) on the *Escobedo* holding:

"Our holding there stressed the fact that the police had not advised the defendant of his constitutional privilege to remain silent at the outset of the interrogation, and we drew attention to the fact at several points in the decision, 378 U.S., at 483, 485, 491 [84 S.Ct. at 1761, 1762, 1765]. This was no isolated factor, but an essential ingredient in our decision. The entire thrust of police interrogation there, as in all the cases today, was to put the defendant in such an emotional state as to impair his capacity for rational judgment. The abdication of the constitutional privilege—the choice on his part to speak to the police—was not made knowingly or competently because of the failure to apprise him of his rights; the compelling atmosphere of the in-custody interrogation, and not an independent decision on his part, caused the defendant to speak."

These quotations from *Miranda*, particularly the one just above, standing without further explanation give some weight to the reading which the District Court in the case before us gave to *Escobedo*. But a week after the *Miranda* decision, on June 20, 1966, the

Supreme Court felt called upon to decide in Johnson v. State of New Jersey, supra, whether or not *Escobedo* and *Miranda* should be given retroactive application. In giving its reasons for making *Escobedo* and *Miranda* nonretroactive, but applicable only prospectively to trials held after the dates of the respective decisions, the *Johnson* court (at page 729 of 384 U.S. at page 1779 of 86 S.Ct.) said:

"We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial.

"Having in mind the course of the prior cases, we turn now to the problem presented here: whether *Escobedo* and *Miranda* should be applied retroactively. (Footnote omitted) Our opinion in *Miranda* makes it clear that the prime purpose of these rulings is to guarantee full effectuation of the privilege against self-incrimination, the mainstay of our adversary system of criminal justice. See [384 U.S.] pp. 458–466 [86 S.Ct. 1602]. They are designed in part to assure that the person who responds to interrogation while in custody does so with intelligent understanding of his right to remain silent and of the consequences which may flow from relinquishing it. In this respect the rulings secure scrupulous observance of the traditional principle, often quoted but rarely heeded to the full degree, that 'the law will not suffer a prisoner to be made the deluded instrument of his own conviction.' (2 Hawkins, Pleas of the Crown 595 (8th ed. 1824) (Cited in footnote). Thus while *Escobedo* and *Miranda* guard against the possibility of unreliable statements in every instance of in-custody interrogation, they encompass situations in which the danger is not necessarily as great as when the accused is subjected to overt and obvious coercion.

"At the same time, our case law on coerced confessions is available for persons whose trials have already been completed, providing of course that the procedural prerequisites for direct or collateral attack are met. See Fay v. Noia, 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963). Prisoners may invoke a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years. See Reck v. Pate, 367 U.S. 433 [81 S.Ct. 1541, 6 L.Ed.2d 948] (1961). That test now takes specific account of the failure to advise the accused of his privilege against incrimination or to allow him access to outside assistance. See Haynes v. [State of] Washington, 373 U.S. 503 [83 S.Ct. 1336, 10 L.Ed.2d 513] (1963); Spano v. [People of State of] New York, 360 U.S. 315 [79 S.Ct. 1202, 3 L.Ed.2d 1265] (1959). Prisoners are also entitled to present evidence anew on this aspect of the voluntariness of their confessions if a full and fair hearing has not already been afforded them. See Townsend v. Sain, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963). Thus while *Escobedo* and *Miranda* provide important new safeguards against the use of unreliable statements at trial, *the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim.*" (Emphasis added)

The *Johnson* court (pages 733–734 of 384 U.S., 86 S.Ct. 1772) quoted the portion of the *Escobedo* opinion cited by the District Judge below as being the precise holding of *Escobedo* "apart from its broad implications". After stating that the *Escobedo* holding is available only to persons whose trials began after June 22, 1964, the date on which it was decided, the Court continued:

"As for the standards laid down one week ago in *Miranda,* if we were persuaded that they had been fully anticipated by the holding in *Escobedo,* we would measure their prospectivity from the same date. Defendants still

to be tried at that time would be entitled to strict observance of constitutional doctrines already clearly foreshadowed. The disagreements among other courts concerning the implications of *Escobedo*, (footnote omitted) however, have impelled us to lay down *additional guidelines for situations not presented by that case*. This we have done in *Miranda*, and these guidelines are therefore available only to persons whose trials had not begun as of June 13, 1966."

Davis v. State of North Carolina, supra, was decided the same day (June 21, 1966) as Johnson v. State of New Jersey. The *Davis* court reviewed, on certiorari, a rape-murder conviction based on oral and written confessions. The State Court trial in North Carolina ante-dated both *Escobedo* and *Miranda*. The Supreme Court reversed because of coercive circumstances surrounding the obtaining of the confessions. At page 740 of 384 U.S. at page 1763 of 86 S.Ct. the Court said:

"We have also held today, in Johnson v. [State of] New Jersey, [384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882] that our decision in *Miranda*, delineating procedures to safeguard the Fifth Amendment privilege against self-incrimination during in-custody interrogation is to be applied prospectively only. Thus the present case may not be reversed solely on the ground that warnings were not given and waiver not shown. As we pointed out in *Johnson*, however, the nonretroactivity of the decision in *Miranda* does not affect the duty of courts to consider claims that a statement was taken under circumstances which violate the standards of voluntariness which had begun to evolve long prior to our decisions in *Miranda* and *Escobedo* v. [State of] Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] (1964). This Court has undertaken to review the volun-

tariness of statements obtained by police in state cases since Brown v. [State of] Mississippi, 297 U.S. 278 [56 S.Ct. 461, 80 L.Ed. 682] (1936). The standard of voluntariness which has evolved in state cases under the Due Process Clause of the Fourteenth Amendment is the same general standard which applied in federal prosecutions—a standard grounded in the policies of the privilege against self-incrimination. Malloy v. Hogan, 378 U.S. 1, 6–8 [84 S.Ct. 1489, 1492, 1493, 12 L.Ed.2d 653] (1964).

"The review of voluntariness in cases in which the trial was held prior to our decisions in *Escobedo* and *Miranda* is not limited in any manner by these decisions. *On the contrary, that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation, as is now required by Miranda,* is a significant factor is considering the voluntariness of statements later made. The factor has been recognized in several of our prior decisions dealing with standards of voluntariness. Haynes v. [State of] Washington, 373 U.S. 503, 510–511 [83 S.Ct. 1336, 1341–1342, 10 L.Ed.2d 513] (1963); Culombe v. Connecticut, 367 U.S. 568, 610 [81 S.Ct. 1860, 1883, 6 L.Ed.2d 1037] (1961); Turner v. [Commonwealth of] Pennsylvania, 338 U.S. 62, 64 [69 S.Ct. 1352, 93 L.Ed. 1810] (1949). See also Gallegos v. Colorado, 370 U.S. 49, 54, 55 [82 S.Ct. 1209, 1212, 1213, 8 L.Ed.2d 325] (1962). Thus, the fact that Davis was never *effectively advised of his rights gives added weight to the other circumstances* described below which made his confessions involuntary." (Emphasis added)

Clewis v. State of Texas, supra, was decided by the Supreme Court on April 24, 1967.[6] It also came up for direct review on certiorari.[7] Again, the ques-

---

6. And hence not available to the District Judge at the time of the decision below, October 27, 1966.

7. Clewis' conviction was affirmed by the Court of Criminal Appeals of Texas October 4, 1965, rehearing denied Novem-

tion involved was whether a confession admitted against the defendant violated constitutional standards. The Supreme Court opinion does not give the date of Clewis' trial. Neither does the opinion of the Court of Criminal Appeals (see Footnote [7]), but the dates of his detention and subsequent interrogations leading to the statement introduced against him at trial are recited in both opinions as occurring in late June and early July, 1962. Thus from the record, we cannot determine whether the trial occurred prior to or after the date of the *Escobedo* decision, June 21, 1964. We have satisfied ourselves however that the trial started May 11, 1964, a little over one month prior to *Escobedo*.[8]

Among the factors recited by the Supreme Court as the basis for its conclusion that the "confession" was not voluntary was the following:

"(1) During this long period of custody, petitioner was never fully advised that he could consult counsel and have counsel appointed if necessary, that he was entitled to remain silent, and that anything he said could be used as evidence against him. Cf. Davis v. [State of] North Carolina, 384 U.S. 737 [86 S.Ct. 1761, 16 L.Ed.2d 895] (1966); Miranda v. [State of] Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966)."

In setting the background for its decision the Court said:

"The trial of this case was prior to the date of decision of Miranda v. [State of] Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the requirements of which, therefore, are not directly applicable. Johnson v. [State of] New Jersey, 384 U.S. 719 [86 S.Ct. 1772, 16 L.Ed.2d 882] (1966), although relevant on the issue of volun-

tariness. Davis v. [State of] North Carolina, 384 U.S. 737 [86 S.Ct. 1761, 16 L.Ed.2d 895] (1966)."

We think it significant in consideration of the question before us that the opinion of the Supreme Court, by Mr. Justice Fortas, made no mention of whether the trial of Clewis occurred before or after the *Escobedo* decision. The Court of Criminal Appeals opinion cites *Escobedo* as not controlling because Clewis made no request for counsel. If, as the District Judge in our case concluded, *Escobedo* would require setting aside the State court conviction upon the single ground of the failure to warn of the "absolute constitutional right to remain silent", Clewis' trial date vis-a-vis the date of the *Escobedo* decision would have been of critical importance to the Supreme Court in disposing of Clewis. This is so even though Clewis' trial actually began shortly prior to the effective date of *Escobedo*, June 21, 1964. If *Escobedo* had held the same significance to Mr. Justice Fortas that it did to the court below, we think its non-applicability would have been emphasized by him, precisely as the non-applicability of *Miranda* was. (See quotation from Clewis, supra, this page).

Our rather tentative and uncertain conclusion that *Escobedo* was misread and misapplied below is thus rendered firmer and finally solidified as we go step by step from *Escobedo* to *Miranda* to *Johnson* to *Davis* and finally to *Clewis*.

■ We hold therefore that the trial court fell into error in granting habeas solely and narrowly upon the basis of the failure of the arresting officers to warn Payton of his right to remain silent. The "totality of circumstances" must be examined to determine whether or not Payton's statement was

ber 10, 1965, Second Motion for Rehearing denied (with opinion) January 5, 1966. Certiorari was granted October 10, 1966, 385 U.S. 814, 87 S.Ct. 104. The opinions of the Court of Appeals appear at 415 S.W.2d 654.

**8.** Upon inquiry of the Attorney General of Texas we are advised that Clewis'

trial commenced May 11, 1964, in the district court of Midland County, Texas. Verdict was rendered May 17, 1964 and judgment was entered May 18, 1964. Motion for new trial was denied and sentence imposed July 27, 1964.

**270**

coerced, giving appropriate weight to the failure to warn as a relevant factor.

Upon remand there must also be considered the other contentions of Payton with respect to claimed violation of Fourteenth Amendment rights arising from his trial. In order that these contentions may be examined uninfluenced by any anticipatory discussion of ours with respect to the evidence, and further with respect to the critical weight to be given to the various relevant factors, we purposely refrain from setting forth here the circumstances surrounding Payton's arrest and interrogation.

## II.

■ Neither below nor on brief or by oral argument before us did Texas raise any question of exhaustion of State remedies. Before us it simply sought reversal of the federal district court upon the merits. This being true, and since the exhaustion of State remedy requirements of Fay v. Noia have been satisfied (see footnote 2), and further since the court below has already held a full plenary hearing, the question of what procedure to require on remand would at first glance seem to be answered by directions to the court below to make appropriate findings as to voluntariness and as to the other federal constitutional rights raised by Payton's petition. This could be done on the record already made, or after taking additional testimony.

We believe however that principles of comity, of cooperation and of rapport between the two sovereigns require a different disposition. We remand with instructions to deny any relief and dismiss the Writ, without prejudice to Payton's right to reapply for relief to the State court in which he was convicted.

Our reasons for this disposition are briefly set forth hereinafter. Despite the exhaustion of available State remedies before the application for habeas

was made to the court below, Article 11.07, Texas Code of Criminal Procedure (1965) has since been amended, effective August 28, 1967, and has been interpreted by the Texas Court of Criminal Appeals (per Woodley, Presiding Judge) in Ex parte Young, 418 S.W.2d 824 (Tex. Crim.App. September 14, 1967) to be "exclusive" and to provide for a full hearing on contested issues of fact in the Texas District Court where the applicant was convicted, with findings of fact and conclusions of law filed in the Court of Criminal Appeals.[9] If the postconviction remedy provided for in Article 11.07, supra, before its amendment and construction in Ex parte Young, supra, was adequate under the criteria set out by the United States Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), as this court has so held,[10] it was not so understood by the Criminal District Court No. 4 of Harris County, Texas, the court in which Payton was convicted and which refused to permit Payton to even file an application for Writ of Habeas Corpus substantially the same as that before us today. That the State remedy is now adequate is evident from the Texas Court of Criminal Appeal's opinion in Ex parte Young, supra, which spells out the procedure to be followed in servicing applications for Writs of Habeas Corpus by state-convicted prisoners. There is no reason why we should not take advantage of that procedure in this case.

On the contrary, dismissal without prejudice to re-apply in State court would best effectuate the policies which led the Texas Court of Criminal Appeals to its decision in Ex parte Young, supra. The State District Court in which Payton was convicted is in the best position to evaluate and weigh the testimony during and circumstances surrounding the trial and hearing on motion for new trial. The witnesses who testified and who

9. See footnotes 2 and 3, supra, and authorities cited therein.

10. Carroll v. Beto, 379 F.2d 329 (5 Cir. 1967), affirming Judge Leo Brewster's

Memorandum Order, 270 F.Supp. 812, N.D.Tex., May 3, 1967; see Castillo v. Beto, 281 F.Supp. 890, N.D.Tex., March 10, 1967; Harris v. Beto, 280 F.Supp. 200, N.D.Tex., Jan. 7, 1967.

may be needed to testify at any additional hearing deemed necessary under this opinion would be readily available to that court, as would the attorneys concerned with the case. Most important is the fact that deference to the State court in this case would further reduce the possibility of friction and fortify the rapport between State and Federal Judges, and would strengthen the holding of the Texas Court of Criminal Appeals in Ex parte Young, supra, at p. 270, that the duties and responsibilities of State and Federal Judges in the administration of federal constitutional law are co-equal.

By reversing the United States District Court in this case, we put Payton, in effect, right back where he started. The only conclusion of law drawn by the court below has been negated and the only facts upon which that conclusion of law was based were undisputed. Thus, all of the disputed facts alleged by Payton in his application remain unresolved and all of the law upon which he bases his claim for relief undetermined. We are thus presented with, and accept the opportunity to take advantage of the expanded scope of Article 11.07, supra, as construed by the Texas Court of Criminal Appeals, and attested to by Judge Leo Brewster of the United States District Court for the Northern District of Texas, and affirmed by this Court.[11] The State court in which Payton was convicted, and to which he should now be required to re-address his application, can make the findings of fact contemplated by Article 11.07, supra, as amended, using the transcripts of the trial, the hearing on motion for new trial, the hearing on the application had in the court below, and an additional evidentiary hearing, if such is deemed necessary. Conclusions of law can be drawn from these facts and the whole record can be reviewed, and any relief granted, by the Texas Court of Criminal Appeals, as set out in Ex parte Young, supra. By requiring this procedure to be followed in this case, we would require no more than should have been done in the first place.

We conclude that this opportunity to fall fully behind the procedures envisioned by Ex parte Young, supra, can, and should be taken even at this stage of the case. The Texas Court of Criminal Appeals, in conjunction with its opinion in the above case, ordered all petitions then pending in that court, "in which no action has been taken, other than those which reflect that such petition or one containing like sworn allegations of fact have been presented to the judge of the court where the felony conviction occurred," be denied without prejudice.[12] Since this case is now in the same position as if nothing had been done, as pointed out above, we consider ourselves justified in doing the same. If a basis in the record is needed before this remedy would be advisable, such a basis can be found in Paragraph "IV" of Payton's Application for Writ of Habeas Corpus in the court below.[13] While not praying

11. See Ex parte Young, 418 S.W.2d 824 (Tex.Crim.App. Sept. 14, 1967) and cases cited note 10 supra.

12. Order, Texas Court of Criminal Appeals, In re Post-Conviction Petitions for Writ of Habeas Corpus (2), Sept. 14, 1967.

13. "The Petitioner would show the Court that the post conviction procedure as employed by the State of Texas was unconstitutional and it was in effect a suspension of the right to a habeas corpus as guaranteed by the constitution; and in connection thereto, the Petitioner would show the Court that the state courts of Texas including the Court of Criminal Appeals have interpreted both the state law and the federal constitution as permitting them to deny an application for a writ of habeas corpus without making a ruling, hearing evidence or making an examination of the record in connection thereto, the effect of which is to deny the Petitioner the opportunity and the right to develop evidence and to obtain a ruling by a court as to the sufficiency of allegations made in his petition for a habeas corpus. Though allegations contained in Petitioner's application for writ of habeas corpus are

272

for the remedy here contemplated, Payton does complain of his summary treatment on application in the State courts, and his prayer for a hearing in those courts is clear.[14]

 In short, our disposition of this case requiring Payton to reapply for relief to the State court in which he was convicted reaffirms and strengthens the policies implicit in 28 United States Code § 2254 and in Article 11.07, Texas Code of Criminal Procedure (1965), as amended, and as interpreted by both Federal and State Judges sitting in Texas: That the State court in which an applicant was convicted is best able to determine disputed issues of fact presented in an application for a Writ of Habeas Corpus by a State prisoner, and that such state court is at least co-equal with Federal courts in its duties and responsibilities in the administration of federal constitutional law.[15]

The judgment below is reversed and remanded, with instructions to deny the relief requested and dismiss the Writ, without prejudice to Payton to re-apply in the State court in which he was convicted.

Reversed and remanded, with directions.

sufficient to require a reversal of the finding of conviction, the imposition of the death penalty, the Criminal District Court No. 4 of Harris County, Texas as well as the Court of Criminal Appeals of the State of Texas denied Petitioner's right to file an application for a writ of habeas corpus and to develop evidence in connection thereto and made no ruling as to the legality of Petitioner's confinement." (Record p. 4)

14. "WHEREFORE, Petitioner prays that the writ of habeas corpus be granted forthwith by this Honorable Court directed to Dr. George Beto, Warden-Director of the Texas Department of Corrections commanding him to have the body of the Petitioner before the Criminal District Court No. — of Harris County, Texas,

without delay and that the said Court hear evidence concerning his confinement in the circumstances in connection therewith and certify such evidence to the Court of Criminal Appeals of the State of Texas though the said Court in their considering and decide matters concerning Petitioner's complaint together with the time and cost of Petitioner's restraint that Petitioner be restored at his full liberty." (Record pp. 18–19).

15. See further Sheehan v. Beto, Director, etc. (5 Cir. December 21, 1967) 387 F.2d 263, affirming a U. S. District Court sitting in Texas which dismissed a habeas application for failure to comply with Article 11.07, Texas Code of Criminal Procedure, as amended.