STATE of Missouri, Respondent,

v.

Cecil SMITH, Appellant.

No. 54271.

Supreme Court of Missouri, Division No. 2.

March 9, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

FINCH, Judge.

Defendant, having been convicted by a jury of burglary second degree and stealing, was sentenced by the trial court, pursuant to the Second Offender Act, to consecutive sentences of ten years and five years for the burglary and stealing. After an unavailing motion for new trial, defendant appeals. We affirm.

The first and principal point briefed on appeal by defendant is that his arrest and the ensuing search and seizure were unlawful under the Fourth and Fourteenth Amendments to the Constitution of the United States and that the trial court erred in overruling his motion to suppress the evidence so seized. We recite such of the evidence as is necessary to a determination of that question.

On February 26, 1968, Mr. and Mrs. Cornelius Roach lived in the downstairs of a duplex located at 420 East 45th Street in Kansas City. The back door to the Roach home was equipped with a doorbell which rang chimes when it was used. On the day in question, the back door to the house was closed but not locked. This door opened into a small entrance hallway, next to which were the kitchen and a bedroom occupied by Miss Ruth James, a maid and housekeeper. Other rooms of the house were to the front of the hallway, the kitchen and Miss James' bedroom.

At about 1:30 p. m. on February 26, 1968, Miss James was in her own room. Although the door chimes did not ring, she heard the rear door of the house open. Shortly thereafter, the door to her own room was opened by a man who then walked in. When the man (the defendant) saw Miss James, he asked if she was the janitor, to which she replied in the negative. Defendant then said that he was looking for work, to which Miss James stated that she could not help him because the people who owned the property were not there at that time. Defendant then left.

Miss James called Mrs. Roach and told her of the incident, and Mrs. Roach immediately called the police. Miss James, meanwhile, watched through the window and observed defendant go a short distance to an apartment building at 510 East 44th Street, which he then entered.

In about five minutes, Patrolman Matthew Jordan arrived and talked to Miss James and Mrs. Roach. Miss James related the above facts to Jordan and described the man who had entered the home as a negro male with a bad eye, wearing a brown tweed topcoat, gray trousers, a gray felt hat and dark shoes.

The officer then went to the apartment building which Miss James had seen defendant enter. He did not find defendant in that building or in the one next door, which he also searched. The officer then got in his car and drove around the neighborhood. As he was coming back down Rockhill Road, he observed defendant coming out of an apartment building at 4348–

50 Rockhill Road, carrying a paper bag. He corresponded to the description given by Miss James, so Officer Jordan placed him under arrest, and then looked for any possible weapons in the paper sack. Inside, he observed a Yashica camera, a pair of black leather shoes, a wrist watch, a blue shirt and a sports coat. The officer then took the defendant to the station, where he booked him for burglary. This was based on the unauthorized entry by defendant of the Roach home, because at that time the officer did not know of the burglary of the apartment of David E. Knuti for which he subsequently was prosecuted.

On the evening of February 26, 1968, Knuti came home to his apartment at 4348–50 Rockhill Road at about 10:30 p. m. He found that the front door, which he had locked when he left that morning, was unlocked. The next day he noticed that one of the speakers on his stereo had been knocked off the hinge onto the floor. He then made a search and found that his camera, plus some other items, were missing. He reported the loss of these things to the police and subsequently, at the police station, he identified as his property the items which had been in the paper sack carried by defendant when he was arrested.

Defendant filed a motion to suppress as evidence the items seized from him by Officer Jordan when he was arrested. Officer Jordan testified at the hearing on that motion and related the facts given to him by Miss James and Mrs. Roach and the various things he observed, as narrated in this opinion. The defendant did not testify or offer any evidence on the motion. The trial court overruled the motion to suppress, holding that the arrest was lawful, that the officer had proper cause to make the arrest, that the items which defendant sought to suppress as evidence were obtained pursuant to lawful search following the arrest and therefore should not be suppressed. At the trial the only witnesses were Miss James, Officer Jordan, and Mr. Knuti. Defendant renewed his objection to the items of evidence when they were offered, but did not testify or offer any evidence on his own behalf.

The critical issue, of course, is whether Officer Jordan had probable cause to arrest defendant when he did. The test to be applied in the determination of that issue is stated in Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142: "The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879; Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134. 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' Brinegar v. United States, supra, at 176, 69 S.Ct. at 1311."

In State v. Seymour, Mo., 438 S.W.2d 161, a recent decision by Division I of this court, the opinion, after recognizing the applicability of standards prescribed by Beck v. Ohio, supra, then states as follows, 1. c. 163: "The existence of probable cause for an arrest must necessarily depend upon the facts of each particular case. 'The existence of "probable cause," justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be deter-

mined in each case in the light of the particular circumstances and the particular offense involved.' 5 Am.Jur.2d., Arrest, § 48, p. 740."

In reviewing the action of the trial court on the motion to suppress, we "must affirm that finding provided it is based on substantial evidence and no clear error appears. Miller v. United States, 8 Cir., 1966, 354 F.2d 801, 808." Gullett v. United States, 8 Cir., 387 F.2d 307, 309.

▮ Applying the tests as articulated above, we conclude that the arrest of defendant by Officer Jordan was authorized. A man fitting the description of defendant entered the home of Cornelius Roach on February 26, 1968, without any authorization or invitation, and without knocking or sounding the door chimes to advise of his presence and to attract the attention of the occupants. Instead, he simply silently opened the back door and entered the house. The opening of an unlocked door has been held to constitute the forcible breaking required for second degree burglary if done with intent to commit burglary and such intent may be inferred from the circumstances. State v. Fritz, Mo., 379 S.W.2d 589, 591; State v. Rhodes, Mo., 408 S.W.2d 68, 70. Inside, defendant did not knock or call out to attract someone's attention but, instead, opened the door to Miss James' bedroom and entered that room. When he found Miss James there, he made conversation by asking if she was the janitor, and said he was looking for work. After leaving the Roach home, he then went a short distance and entered an apartment building. This incident was reported immediately by Mrs. Roach to the police, and when Officer Jordan arrived these facts were related to him, along with a description of the man who had entered the house. After searching the neighborhood, including the apartment building which defendant had been seen entering, the officer, a few minutes later, observed defendant coming out of still a third building in that neighborhood, carrying a paper sack of something in his arms. This was an area with which the officer was familiar. He knew that it was an all white neighborhood and that no negro lived in the building from which the defendant was seen exiting. He further could see that the description given him by Miss James of the man who a few minutes previously had been in the Roach house corresponded with the man he now observed. The officer knew that the unauthorized entry of the Roach house had been made, that the man had then entered a second building in the neighborhood, and now was observed by the officer coming out of still a third building in this neighborhood, carrying a sack of something in his arms. We conclude that this trustworthy information possessed by Officer Jordan was sufficient to warrant him as a prudent officer in believing that this defendant "had committed or was committing an offense". Beck v. Ohio, supra. No clear error appears, and we affirm the trial court's finding that the arrest was lawful. Gullett v. United States, supra.

The search immediately following the arrest of defendant was authorized. "When one has been lawfully arrested, a police officer may take from him articles of evidentiary value without violating his constitutional guaranties against unreasonable searches and seizures." State v. Johnson, Mo., 420 S.W.2d 305, 308; Gullett v. United States, supra. The search was not invalidated because it disclosed articles which were taken in a different offense than the one for which he was arrested. Gullett v. United States, supra, 387 F.2d l. c. 310.

▮ The only other point briefed by defendant on appeal is the contention that the court erred in giving Instruction No. 3 in that it authorized the jury to find appellant guilty of burglarious stealing if he stole property of any value from the residence of David Knuti without requiring a specific finding that he took property which was mentioned in the information and evidence. In support of that contention, defendant cites State v. White, Mo., 445 S.W.2d 301, 303. The difficulty with

defendant's contention with respect to Instruction No. 3 is that no specific objection was made thereto at the trial, and in the motion for new trial the only statement with reference to Instruction No. 3 was a general assignment that "the court erred in giving Instructions One through Eight over the objection of defendant's counsel." This assignment is wholly insufficient to preserve anything for review. Supreme Court Rule 27.20(a), V.A.M.R.; State v. Deutschmann, Mo., 392 S.W.2d 279 [12].

Judgment affirmed.

All of the Judges concur.