**UNITED STATES of America,
Appellee,**

v.

**Rickie James WAHLQUIST, Appellant.**

**No. 20478.**

United States Court of Appeals,
Eighth Circuit.

Feb. 25, 1971.

John S. Connolly, St. Paul, Minn., on brief for appellant.

Robert G. Renner, U. S. Atty., and J. Earl Cudd, Asst. U. S. Atty., Minneapolis Minn., on brief for appellee.

Before MATTHES, Chief Judge, Mr. Justice CLARK,* and BRIGHT, Circuit Judge.

---

* The Honorable Tom C. Clark, Retired Associate Justice of the Supreme Court of the United States, sitting by special designation.

MATTHES, Chief Judge.

Appellant waived indictment, was charged by information and found guilty of possessing $444 in currency taken from the Security State Bank of Marine in a holdup in violation of 18 U.S.C. § 2113(c).[1] Appellant, after pleading not guilty, filed a motion to suppress evidence seized from him at the time of his arrest. After a full evidentiary hearing, the district court denied the motion. Appellant waived his right to a jury trial and submitted the merits of the case to the district court on the transcript of the preliminary hearing and the evidence submitted to the district court on the motion to suppress. The Government and the appellant stipulated that: 1) the Security State Bank of Marine is a state bank, the deposits of which are insured by the Federal Deposit Insurance Corporation; 2) the bank was held up by a lone gunman other than appellant on the morning of December 17, 1969; 3) appellant was arrested on December 18, 1969 at which time $444 in currency was recovered from his billfold and from his pocket, and ten of the $20 bills recovered from appellant had serial numbers identical to the serial numbers listed in the bank's records of the "bait money" which was given to the gunman at the time of the robbery. Number 3 was agreed to by appellant subject to the renewal of the objection made in the motion to suppress, that the $444 in currency should not be considered because it was the product of an illegal search.

On April 6, 1970 the district court found appellant guilty as charged, and on July 9, 1970 sentenced him to the custody of the Attorney General for treatment and supervision under the provisions of the Federal Youth Corrections Act, 18 U.S.C. § 5010(b). This appeal is taken from the judgment of conviction.

The sole issue presented for review is whether the district court erred in denying the motion to suppress the $444 in currency. Appellant alleges that the search in which this money was obtained was in violation of his Fourth Amendment rights, because there was no probable cause for the arrest.

The undisputed facts adduced at the hearing on the motion to suppress showed that on the morning of December 17, 1969, Sheriff Westphal was advised that the Security State Bank of Marine had been robbed. Shortly after receiving that information he learned from persons witnessing the holdup that a lone gunman with yellowish-reddish hair had perpetrated the robbery. At about 10:00 p.m. that evening Officer Stewart of the Forest Lake Police Department advised the sheriff that he had learned from an informer, who had furnished Officer Stewart reliable information in the past, that one Donald Peterson was the holdup man, and that another person was involved in the commission of the offense. According to the information conveyed by the informer, Peterson could be located in the basement apartment at 400 Holly Avenue in St. Paul. The informer also related that Peterson had off-color, yellowish-red hair.

Upon receipt of this information, Sheriff Westphal proceeded to the apartment at 400 Holly, but learned nothing of substance. However, after leaving the apartment he received a radio message to return to 400 Holly because the occupants had information for him. On his return, at 12:30 a.m., December 18, 1969, the occupants of the apartment told the sheriff that Donald Peterson and the appellant had been there and had left with two girls about one hour before the sheriff's first visit, because their suspicions were aroused by the presence of policemen in the area. The

1. Section 2113(c) makes it an offense to possess any money, knowing the same to have been taken from a bank the deposits of which are insured by the Federal Deposit Insurance Corporation.

occupants of the apartment also informed Sheriff Westphal that Peterson had yellowish-reddish hair, but that he intended to dye it black.

The sheriff returned to the same basement apartment a third time at 9:00 a.m. on December 18, and was alerted by the occupants that Peterson, whose hair was now black, appellant, another male, three females, and a baby had left in a 1965 Chevrolet Super Sport; that they intended to stop at the Washington County Welfare Office and drop off the baby, and then drive on to South Dakota. In addition to this information, a female informant at the apartment told the sheriff that Peterson had committed the bank robbery, and that appellant was involved. The sheriff testified that he had known this female informant for approximately eight years and that she had given him information in the past, some of which had been found to be correct.

The sheriff, together with F.B.I. agents, then proceeded toward the Washington County Welfare Office. A few blocks from 400 Holly, they came upon a 1965 lavender Chevrolet Super Sport. They followed it and observed that there were at least five persons in it. One of the persons in the back seat turned around and looked at Sheriff Westphal's car. The sheriff immediately recognized him as Donald Peterson, and observed that he now had black hair. Peterson was known to the sheriff, who had seen him on a number of occasions when he had been held in jail in connection with other offenses. The sheriff was aware of an outstanding arrest warrant for Peterson for escape from the St. Paul-Ramsey jail.

When the lavender Chevrolet pulled into a driveway, Sheriff Westphal and the F.B.I. agents stopped the car and arrested Peterson and the appellant. Peterson was searched first by an F.B.I. agent who removed from his pockets a knife, a handful of nine millimeter cartridges and a large amount of currency. The agent also removed a nine millimeter pistol from the back seat of the Chevrolet where Peterson and appellant had been seated. The same agent then searched appellant and found the $444 in currency, some of which was later identified as the "bait money" given to the holdup man at the robbery of the Security State Bank the day before.

The validity of appellant's arrest must be resolved by application of state law within the confines of the federal constitution. United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Minnesota law permits a warrantless arrest for a felony if there is probable cause to believe that a crime has been committed and that the defendant has committed it. Minn.Stat. § 629.34(3) (1969). It is well-established that an arrest is made with probable cause if the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information are sufficient to warrant a man of reasonable prudence to believe that an offense had been or is being committed by the defendant. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Theriault v. United States, 401 F.2d 79, 81 (8th Cir. 1968), cert. den. 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969).

Here, Sheriff Westphal received information that Peterson had committed the bank robbery and that he had an accomplice. This communication was conveyed to the sheriff by Officer Stewart, who had received such information from an informant known to the officer to be reliable. The other information given by this same informant concerning Peterson's unusual hair color and the address at which he could be found was

specific and was further verified by the personal investigation of the sheriff of the witnesses at the bank, and by his interview with the occupants of the address supplied by the informant. The information that Peterson had an accomplice was corroborated by the female informant who revealed that appellant and Peterson were both involved in the bank robbery. Other information related by this female informant concerning the change in Peterson's hair color, the detailed description of the Chevrolet and its occupants and the direction in which the car was heading, was all verified by the personal observation of Sheriff Westphal and the F.B.I. agents in following the car prior to the arrest. The information was further corroborated by Sheriff Westphal's identification of Peterson in the car prior to the stopping of the auto. Each detail given by each informant was borne out at the progressive stages of the investigation of the bank robbery. We are convinced that the interlocking nature of the specific and detailed information discovered during the investigation, which was either verified by personal observation or corroborated by duplicate information from an independent source, buttressed the reliability of each informant so as to give the arresting officers reasonable cause to believe that appellant was involved in the bank robbery. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Mitchell, 425 F.2d 1353 (8th Cir. 1970); United States v. Lugo-Baez, 412 F.2d 435 (8th Cir. 1969), cert. denied 397 U.S. 966, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970); United States v. Hood, 422 F.2d 737 (7th Cir. 1970); United States v. Malo, 417 F.2d 1242 (2d Cir. 1969), cert. denied 397 U.S. 995, 90 S.Ct. 1135, 25 L.Ed.2d 403 (1970).

We are satisfied that here, if ever, probable cause existed for the arrest and the ensuing search. The district court properly denied the motion to suppress.

Affirmed.