**Cecil SMITH, Petitioner,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.**

Civ. A. No. 19037-3.

United States District Court,
W. D. Missouri, W. D.

April 21, 1971.

748

Cecil Smith, pro se.

J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## JUDGMENT DENYING PETITION FOR HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

Petitioner, a state convict confined in the Missouri State Penitentiary, petitions this Court for a writ of federal habeas corpus adjudicating as invalid his state conviction of second degree burglary. Petitioner also requests leave to proceed in forma pauperis. Leave to proceed in forma pauperis has been previously granted.

Petitioner states that, after a plea of not guilty, he was convicted by a jury in the Circuit Court of Jackson County of second degree burglary; that he was sentenced on that conviction on October 18, 1968, to a term of fifteen years' imprisonment; that he appealed from the judgment of conviction and imposition of sentence to the Missouri Supreme Court; that the Missouri Supreme

Court affirmed his conviction and sentence on appeal (State v. Smith, Mo., 451 S.W.2d 87); that he has filed no motion to vacate, set aside or correct sentence under Missouri Supreme Court Rule 27.26 in the state trial court, or any other petitions, motions or applications with respect to this conviction; and that he was represented by counsel at his arraignment and plea, at his trial, his sentencing, on appeal, and on preparation, presentation or consideration of the petition herein.

Petitioner states the following as the grounds on which he bases his allegation that he is being held in custody unlawfully:

"Petitioner's conviction was based on evidence obtained as a result of an illegal search and seizure in violation of his rights under the Fourth Amendment to the Constitution of the United States."

Petitioner states the following as the facts in support of the above grounds:

"On February 26, 1968, Petitioner was arrested without probably (sic) cause, searched and several items seized. On February 27, 1968, it was determined that said items had been stolen from the apartment of Mr. David Knuti. Mr. Knuti reported the burglary of his apartment one day after Petitioner was arrested."

It appeared from the foregoing that petitioner may have stated the denial of his federal rights and the exhaustion of state remedies in respect to the above contention. A show cause order was therefore issued on February 1, 1971. Respondent's response thereto was filed on February 18, 1971. Respondent attached the following exhibits: a transcript of the proceedings against petitioner in the trial court, petitioner's brief on appeal in the Missouri Supreme Court, respondent's brief in the Missouri Supreme Court, and the opinion of the Missouri Supreme Court, officially reported as noted above. Therein, it was respondent's contention that the search and seizure complained of by petitioner

was lawful because it was incidental to a legal arrest made with probable cause. And the state court records submitted by respondent tended to prove that a full evidentiary hearing was held in the state trial court on a motion to suppress, at the conclusion of which the state trial court overruled the motion to suppress and the overruling was supported by substantial evidence.

█ In his traverse to the response, petitioner, although invited to do so by an order of the Court, did not challenge the accuracy or genuineness of the exhibits submitted by respondent. Neither did petitioner contradict respondent's averment that a plenary evidentiary hearing on the search and seizure question had been held on petitioner's motion to suppress in the state trial court in which the arresting and searching officer testified and in which petitioner was given an opportunity (which his counsel fully exercised) to cross-examine the officer and to present witnesses and other evidence in his own behalf (although he presented none). Further, petitioner has expressly stated that he desires to adduce no further evidence in this case "than that offered to the state trial court in the hearing on the motion to suppress." [1] Under these circumstances, when there has been a plenary evidentiary hearing in the state trial court and the Missouri Supreme Court, on direct appeal, has ruled adversely to petitioner on the merits of his contentions and petitioner desires to adduce no new evidence in federal court and none should apparently be adduced, petitioner's state remedies have been exhausted. White v. Swenson (W.D.Mo.) 261 F.Supp. 42. Further, when, under the same circumstances, the state courts have reliably found facts in the application of current federal standards, it is well established that the federal district court may rely upon the facts reliably found by the state court. Meller v. Swenson (W.D.Mo.) 309 F.Supp. 519, affirmed Meller v. State (C.A.8) 431 F. 2d 120; Mountjoy v. Swenson (W.D. Mo.) 306 F.Supp. 379, 381, and cases there cited; Caffey v. Swenson (W.D. Mo.) 318 F.Supp. 704, 707. The doctrine has recently been reaffirmed in In re Parker (C.A.8) 423 F.2d 1021. See also Procunier v. Atchley, 400 U.S. 446, 450, 91 S.Ct. 485, 487, 27 L.Ed.2d 524, 529. The doctrine includes the principle that the federal district court may independently find facts from the state court record. Meller v. Swenson, *supra.* As will be shown more fully below, the state courts have reliably found the facts and have applied current federal standards as required by the trilogy of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148; Fay v. Noia, 372 U.S. 391, 83 S,Ct. 822, 9 L.Ed.2d 837; and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, and none of the circumstances under which the *Townsend* case requires the federal court to hold a new hearing exist in this case.[2]

1. In his traverse of the response to the show cause order, petitioner requested relief in the form of a granting of the writ of habeas corpus "upon the pleadings, or, in the alternative [a scheduling of] a speedy evidentiary hearing to determine the relief to which petitioner is entitled." Therefore, on March 19, 1971, this Court entered its order directing petitioner to state whether he wished to offer any additional evidence on any of the issues herein raised by him. Petitioner's response was in the negative.

2. Those criteria are generally as follows: "We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 U.S. at 313, 83 S,Ct. at 757, 9 L.Ed.2d at 786.

■ In the hearing in the state trial court, Officer Jordan, the police officer who arrested petitioner, testified in substance that he had been informed by one Ruth James that petitioner had entered without knocking an apartment house in which she was housekeeper; had run from the house when the housekeeper called the police; that the housekeeper said that petitioner had been seen by her entering the front of a house on East 44th Street in Kansas City; and that Jordan then made the arrest and search of petitioner upon seeing him come out of yet a third building with a sack in his hand and recognizing him from Miss James' description and as a Negro in an all-white neighborhood. The facts as found by the state courts are set forth in State v. Smith, *supra*, 451 S.W.2d at 90:

"* * * A man fitting the description of defendant entered the home of Cornelius Roach on February 26, 1968, without any authorization or invitation, and without knocking or sounding the door chimes to advise of his presence and to attract the attention of the occupants. Instead, he simply silently opened the back door and entered the house. The opening of an unlocked door has been held to constitute the forcible breaking required for second degree burglary if done with intent to commit burglary and such intent may be inferred from the circumstances. State v. Fritz, Mo., 379 S.W.2d 589, 591; State v. Rhodes, Mo., 408 S.W.2d 68, 70. Inside, defendant did not knock or call out to attract someone's attention but, instead, opened the door to Miss James' bedroom and entered that room. When he found Miss James there, he made conversation by asking if she was the janitor, and said he was looking for work. After leaving the Roach home, he then went a short distance and entered an apartment building. This incident was reported immediately by Mrs. Roach to the police, and when Officer Jordan arrived these facts were related to him, along with the description of the man who had entered the house. After searching the neighborhood, including the apartment building which defendant had been seen entering, the officer, a few minutes later, observed defendant coming out of still a third building in that neighborhood, carrying a paper sack of something in his arms. This was an area with which the officer was familiar. He knew that it was an all white neighborhood and that no negro lived in the building from which the defendant was seen exiting. He further could see that the description given him by Miss James of the man who a few minutes previously had been in the Roach house corresponded with the man he now observed. * * *" *Id.* 451 S.W.2d at 90.

* * * * * *

"* * * The officer knew that the unauthorized entry of the Roach house had been made, that the man had then entered a second building in the neighborhood, and now was observed by the officer coming out of still a third building in this neighborhood, carrying a sack of something in his arms. We conclude that this trustworthy information possessed by Officer Jordan was sufficient to warrant him as a prudent officer in believing that this defendant 'had committed or was committing an offense.' Beck v. Ohio, supra [379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142] * * *" *Id.* at 90.

On those facts, petitioner has not been denied any of his federal rights. The question presented is whether the arresting officer had probable cause to arrest petitioner and to make a search incident to arrest. Petitioner makes no specific contention concerning the reasonableness or scope of the search otherwise. Generally, warrantless searches, such as that which is alleged in this case, are unreasonable under the Fourth Amendment to the United States Constitution unless the search is within an exception to the warrant requirement. Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523,

87 S.Ct. 1727, 18 L.Ed.2d 930; See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed. 2d 856; Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514. One exception is a search incident to a lawful arrest. Weeks v. United States, 232 U. S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, and cases therein cited. The arrest must be lawful under the authority giving the officer power to arrest, United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, and it must be based upon "probable cause." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.

The basic federal standard which governs this case is that "[p]robable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 138. See also United States v. Wahlquist (C.A.8) 438 F.2d 219. In the latter case it was said that "The validity of appellant's arrest must be resolved by application of state law within the confines of the federal constitution." 438 F.2d at 221. In the case at bar, the Missouri Supreme Court concluded that the arrest was lawful under state law. It is that court, which is the court of last resort in interpreting and construing state law, which is the final arbiter of the legality of the arrest under Missouri law. The question for this Court to determine is whether federal standards of probable cause have been met.

▮▮ On the basis of the state court record, it must be concluded that the arrest in the case at bar comported with current federal standards. In the recent decision of the United States Supreme Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, it was held that probable cause for arrest of the accused existed when two teen-agers, who had earlier noticed a blue compact station wagon circling the block in the vicinity of a Gulf station, saw the station wagon speed away from a parking lot close to the Gulf station, at about the same time learned that the station personnel had been robbed and reported to police that four men were in the station wagon and that one was wearing a green sweater and another a trench coat. The arrest based upon this information was held to be lawful and upon probable cause.

The findings reliably made in this case by the state trial court, and independently shown in the transcript of the hearing on the motion to suppress in the state trial court, show at least as strong a case of probable cause as in Chambers v. Maroney, supra. The officer in the case at bar had reasonable cause to believe that the offense of second degree burglary had been committed according to the reliable information given him by the housekeeper of the house into which he had broken. Further, he had obtained a description of petitioner from the housekeeper. In the hearing on the motion to suppress in the state trial court, Officer Jordan testified that Miss James had described the person who had entered the house in which she was housekeeper as wearing a trench coat, having a bad eye and being colored, and that defendant matched the description. (Tr. 13, 19.) Cf. United States v. Wahlquist, supra, in which probable cause for an arrest for bank robbery was held to exist when an informant "known to the officer to be reliable" communicated to him information concerning defendant's unusual hair color, the address at which he could be found, that he had an accomplice, a description of the automobile in which he was riding and the direction it was heading.

This case is distinguishable from Henry v. United States, supra, and Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688, insofar as it was found in those cases that probable cause to make the arrest did not exist. In

*Henry*, there was nothing to connect the petitioner's loading packages in an alley with any unlawful act. In this case, the arresting officer had probable cause to believe petitioner guilty of burglary. In *Rios*, the arrest took place on suspicion, when the arresting officers saw the petitioner "look up and down the street, walk across the lot, and get into the cab" in a neighborhood which had a reputation for "narcotics activity." 364 U. S. at 256, 80 S.Ct. at 1433, 4 L.Ed.2d at 1690. In the case at bar, probable cause was given by the information of the informant to believe that petitioner had burglarized a residence. Under applicable federal standards, it makes no difference that petitioner was later convicted for burglarizing a different residence than the one which the arresting officer had probable cause to believe that he had burglarized. If the facts and circumstances known by the officer at the time of the arrest are sufficient to justify an arrest for a particular offense, the arrest is constitutionally valid and lawful although the officer actually made the arrest ostensibly for another offense not shown by the facts. Klinger v. United States (C.A.8) 409 F.2d 299.

■■ Petitioner does not raise any question of the reliability of the informant in this case under the rule of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. If raised, however, the question would be easily resolved against petitioner. In the absence of exceptional circumstances not present in this case an informant who states that he is an eyewitness to the commission of an actual crime may be reasonably deemed by an officer to be reliable. McCreary v. Sigler (C.A.8) 406 F.2d 1264, 1269, and cases there cited; cf. Chambers v. Maroney, *supra*; United States v. Wahlquist, *supra*. Nor was the scope of the search unreasonable. Incident to a lawful arrest, the arrested person's person and things under his immediate control may be searched.

Chimel v. California, *supra*; Preston v. United States, 376 U.S. 364, 367, 84 S. Ct. 881, 11 L.Ed.2d 777; Carroll v. United States, 267 U.S. 132, 158, 45 S. Ct. 280, 69 L.Ed. 543; Gullett v. United States (C.A.8) 387 F.2d 307.

■ Petitioner's lone specific objection to the search is that "it is obvious from the transcript that petitioner was arrested because he was a Negro in what was termed an 'all white' neighborhood." Petitioner points to the trial transcript in which Officer Jordan testified that he noticed nothing "suspicious" about petitioner when he arrested him except that he was "carrying this sack, and matching the description that was given to me" and that he was a "Negro male [who came] out of that particular building which is all white." But it is apparent from the portion of the transcript on which petitioner relies that petitioner's being a Negro was only one of several identifying characteristics relied on by the arresting officer in making the arrest of petitioner. This characteristic, in combination with the other identifying characteristics and the circumstances existing at the time of the arrest, established probable cause for the arrest. The arresting officer was not required to close his eyes to the fact that petitioner was a Negro in an all-white neighborhood. When that fact was significant in the light of other circumstances, he had a right to take it into consideration in determining whether to make the arrest.

Petitioner's contention that his conviction was secured in violation of his federal rights by the admission of evidence obtained in violation of his federal rights under the Fourth Amendment to be free of unreasonable searches and seizures is without merit. The petition for habeas corpus herein must be denied.

It is therefore

Adjudged that the petition herein for habeas corpus be, and it is hereby, denied.