**UNITED STATES of America,**
**Appellee,**

v.

**Frank KANCSO, Defendant-Appellant.**
**No. 164, Docket 24686.**

United States Court of Appeals
Second Circuit.

Argued Dec. 2, 1957.

Decided Feb. 7, 1958.

Arthur B. Kramer, Asst. U. S. Atty., S.D.N.Y., New York City (Paul W. Williams, U. S. Atty., S.D.N.Y., New York City, and Album C. Martin, Asst. U. S. Atty., New York City, on the brief), for appellee, United States.

Henry K. Chapman, New York City, for defendant-appellant, Frank Kancso.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District Judge.

MOORE, Circuit Judge.

The appellant, Frank Kancso, appeals from a judgment of conviction and sentence of five years imprisonment for possession of narcotics in violation of 21 U.S.C.A. §§ 173 and 174, after a trial before the court without a jury. Prior to the trial appellant had moved for an order pursuant to Rule 41(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to suppress as evidence seven ounces and one hundred grains of heroin on his person at the time of his arrest on the grounds that the heroin was illegally seized without a search warrant and that the search was not an incident of a lawful arrest. A hearing was held and the court (Murphy, D.J.) denied the motion. Upon the trial appellant called no witnesses, did not cross-examine government witnesses and did not take the stand. Objection to the introduction of the seized evidence was overruled by the trial court (Levet, D.J.).

The sole issue upon this appeal is whether the narcotics agent had "reasonable grounds to believe that the person to be arrested" had committed or was committing a violation of the narcotics act (26 U.S.C.A. § 7607). Congress added this section in July 1956 after it had been conducting extensive hearings on the subject of the narcotics traffic in this country (ch. 629, Title I, § 104(a), 70 Stat. 570).

To justify arrest without a warrant the agent must not only have a belief but also reasonable grounds therefor. Conversely stated in terms of the Fourth Amendment, he must refrain from "unreasonable searches and seizures."

Narcotics Agent Groff made the arrest. All information in his possession, fair inferences therefrom and observation made by him are pertinent to a determination of whether he had reasonable grounds at the time of arrest.

Groff, a narcotics agent with twenty-three years of experience, had been told by an informer, who on previous occasions had supplied him with reliable information, that a person known as "Freddie" had replaced Jack Russo as a runner or distributor of narcotics. The informer furnished a detailed physical description of "Freddie." Checking to ascertain the place of operations of Russo, known to Groff as having recently been convicted for trafficking in narcotics, Groff learned that it was in the vicinity of the Squeeze Inn Bar on 4th Street near Second Avenue, New York City. It was logical for Groff to go to this area and look for a person answering Freddie's description. When in the neighborhood of the Squeeze Inn Bar on December 3, 1956 he saw a person who fitted this description talking to an addict who addressed his companion as "Freddie," a first link had been forged.

On December 21, 1956 Agent Groff again saw appellant in the vicinity of the Squeeze Inn Bar. Appellant, Groff following, boarded a subway train and rode directly to 167th Street in the Bronx. Emerging from the station (McClellan Street exit) appellant met a man known to Groff as "Maxie," previously seen by Groff in the company of known addicts and suspected of being an addict himself. Appellant and Maxie touched hands but the agent could not see what, if anything, passed between them. After two or three minutes of conversation appellant

re-entered the subway and returned downtown to Second Avenue and 4th Street where he peered into the Squeeze Inn Bar.

Appellant's brief visit to the Bronx would seem to be more consistent with a prearranged plan to meet Maxie for a special purpose rather than a trip to have a social chat with a friend. The agent's suspicions led him to seek additional proof which was forthcoming.

On December 26, 1956, Groff, keeping a look-out at the McClellan Street exist, saw appellant again come out of the subway and meet Maxie and another person. This second meeting with Maxie would indicate a possible pattern to be investigated further.

Two days later, on December 28, at approximately the same time and place, appellant again emerged from the subway but this time passed so closely to Groff that Groff was able to observe that he appeared "startled and agitated." After passing Groff appellant turned around to look at Groff again with "agitation written on his face." At this point, Groff, believing that the cumulative results of his surveillance compelled him to make an arrest, approached appellant, put his hand on his arm and said "All right, Freddie, give me the stuff." Appellant, thereupon, produced from his person a paper bag, followed by two more bags. They contained 60 packages of heroin which appellant said he intended to deliver to some of his customers.

Summarizing the grounds which prompted the arrest, the agent had received information from a reliable informer which was corroborated both by "Freddie's" appearance and his area of operations. His role as a runner was a normal inference from his three trips to the Bronx, not for sightseeing or social visits but for short meetings with a particular person known to associate with drug addicts. The agent might and probably would have carried the surveillance further but for the apparent recognition on December 28. He then had to act at once or not at all. Had appellant started to run or dart into an alleyway there would be no doubt that immediate arrest would have been proper. Yet to an agent of long experience with drug peddlers, facial expressions and general demeanor could indicate guilt as convincingly as physical flight. With his background knowledge it was not unreasonable for the agent to believe that appellant had narcotics on his person and was about to deliver them. After recognition by appellant it would be highly unreasonable to suggest that the agent should have followed appellant closely until he met the person to whom delivery was to be made and then stand sufficiently nearby so as to be able to observe that envelopes containing heroin were being transferred. Of course no such event could have occurred. And if the agent had left appellant to his own devices while trying to obtain a warrant sixty packages of heroin would have been distributed to addicts, present and potential, and appellant, knowing he had been watched, probably would have taken to cover.

■ Congress in enacting § 7607 did not use "beyond a reasonable doubt" as the standard for the agents' actions. The word "reasonable" is not to be construed in the abstract or in a vacuum unrelated to the field to which it applies. Standards which might be reasonable for the apprehension of bank robbers might not be reasonable for the arrest of narcotics peddlers. Large quantities of heroin can be transported in very small packages and, even as here, on a person without physical detection. These drugs are passed through the community by stealth. If narcotics agents are to enforce the laws which Congress enacts for the protection of the public, they may well have to depend upon informers, undercover agents, special employees and their own knowledge of the underworld obtained from years of experience.

■ Although appellate courts must zealously guard our citizens against violations of their constitutional rights, it should not be their function to adopt

standards of law enforcement which, in effect, go beyond those set by Congress.

This Court had occasion in United States v. Heitner, 2 Cir., 1945, 149 F.2d 105, to consider both "reasonable cause" and "observed conduct" in justification of arrest, Judge Learned Hand saying (at pages 106, 107):

> "the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties. * * The information which we infer they then got, coupled with the observed conduct of Meierdiercks and Cryne, gave them 'reasonable cause' to make the arrest".

In United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650, the appellant there based his appeal on lack of probable cause for arrest and search. This Court adhered to its ruling in the Heitner case and stated (at page 652):

> "There is no reason to suppose that hearsay evidence derived from an informer is not as competent evidence on which to show probable cause for an arrest as any other proof. The weight to be given it is a matter for the sound discretion of the court which was exercised on the motion to suppress."

The exclusion of hearsay evidence was developed to protect the opposing party's right of confrontation and cross-examination upon the trial. There is no reason for imposing such a restriction in connection with the investigation of crime.

In Carroll v. United States, 1924, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 546 prohibition officers who had seen two months earlier suspected bootleggers going from Grand Rapids to Detroit (a known source of supply) suddenly saw them on the road coming from the direction of Detroit towards Grand Rapids. The officers stopped them, searched the car and found 68 bottles of liquor. Chief Justice Taft in the opinion affirming conviction made an exhaustive review of the search and seizure decisions and concluded that the chance meeting on the highway together with previous knowledge justified their action, saying (267 U.S. at pages 160, 161, 45 S.Ct. at page 288):

> "That the officers, when they saw the defendants, believed that they were carrying liquor we can have no doubt, and we think it is equally clear that they had reasonable cause for thinking so. Emphasis is put by defendants' counsel on the statement made by one of the officers that they were not looking for defendants at the particular time when they appeared. We do not perceive that it has any weight. As soon as they did appear, the officers were entitled to use their reasoning faculties upon all the facts of which they had previous knowledge in respect to the defendants."

The necessity of acting promptly when an appropriate occasion suddenly presents itself was considered by the Supreme Court in United States v. Rabinowitz, 1950, 339 U.S. 56, at page 65, 70 S.Ct. 430, at page 435, 94 L.Ed. 653, Mr. Justice Minton saying:

> "The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential."

Even in the dissent of Mr. Justice Frankfurter he recognized that there were certain situations which excused the procuring of a search warrant "i. e., the justifications that dispense with search warrants when searching the person in his extension, which is his body and that which his body can immediately control, and moving vehicles" (339 U.S. at page 83, 70 S.Ct. at page 443).

**224**

■ There is a vast difference between entering and searching homes or even hotel rooms which are fixed and more or less permanent locations and stopping a person or car on a highway for the same purpose. A warrant can usually be obtained in the first situation without too much risk that the object of the search will disappear. At least, in balance, protection under the Fourth Amendment outweighs the possible advantage of search without a warrant. In the second situation the pedestrian on the street and the car on the highway will not obligingly preserve their status quo; therefore, law enforcement agents must act immediately. Since these were the circumstances confronting the agents in this case and since they possessed sufficient information to constitute reasonable grounds for their arrest and search of appellant Kancso, the judgment is affirmed.