Michael D. CONLEY, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 68–H–625.

United States District Court,
S. D. Texas,
Houston Division.

June 10, 1971.

**50**

Lawrence Ortego, Houston, Tex., for petitioner.

Robert Darden, Asst. Atty. Gen., Austin, Tex., for respondent.

*Memorandum and Order:*

SINGLETON, District Judge.

This action is an application for a writ of habeas corpus in which the petitioner, a state prisoner in respondent's custody, contends that certain evidence admitted to his detriment in his state court trial was a product of coercive influences and an illegal arrest. That conviction, which petitioner now seeks to have vacated, was upon an indictment for felony theft. Because petitioner had been twice previously convicted of felony-grade offenses, he was mandatorily sentenced to a term of life imprisonment. Petitioner's direct appeal from his conviction was not successful. Conley v. State, 390 S.W.2d 276 (Tex.Cr.App.1965).

Petitioner initiated his postconviction efforts by an earlier habeas corpus petition filed in federal court. Conley v. Beto, C.A. 66–H–416 (S.D.Tex.1967). In that suit, petitioner was granted habeas corpus on the narrow ground that the failure of the police officials, whom petitioner encountered on his arrest and subsequent detention, to warn petitioner of his right to remain silent nullified his conviction under Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The state appealed and the appellate court rejected the district court's reading of Escobedo v. Illinois, *supra.* Beto v. Conley, 393 F.2d 497 (5th Cir. 1968). *See also* Texas v. Payton, 390 F.2d 261 (5th Cir. 1968). Because a comprehensive postconviction relief statute had in the meanwhile been enacted by the Texas Legislature, the case, instead of being remanded to the district court, was dismissed with directions to the petitioner to file for relief under Art. 1107, V.A.C.C.P. Petitioner did so and, failing to meet with success, has again applied for federal habeas corpus relief. He has exhausted his available state remedies as 28 U.S.C. § 2254 and Texas v. Payton, *supra*, tell him he must.

The story of petitioner's arrest begins on September 11, 1963, when officers of the Houston Police Department received a call to investigate a felony theft from the House of Television, 1972 W. Gray, Houston, Texas. The complainant revealed that a female of a particular description entered the store and engaged a salesman in a conversation about the purchase of a television. While the salesman was distracted, a man of a particular description entered the store and absconded with a Zenith Radio in a black and white 1956 Buick, license number TP2510, driven by another man. The female was left behind, but officers subsequently found her using the telephone in another store nearby. Upon being questioned, she told the police that she lived on Lyndon Street and that she had reached the instant location by a Courtesy cab. Upon subsequent investigation, the police learned that no Courtesy cab had taken any person to the location on West Gray on that day, and that the woman, identified as Carolyn Williamson, was on bond for car theft, and that she had been previously arrested on several occasions.

Two days later, September 13, two officers, Kirkpatrick and Kutschback, armed with a search warrant, went to Carolyn Williamson's address in search of the stolen property. They found no stolen property at that time, but arrest-

ed everyone on the premises anyway and learned that the 1956 Buick could be found at the Blue Top Courts. The officers then proceeded to that location and found the automobile parked adjacent to one of the cabins. After consulting with the management, the officers knocked on the door and, when it was opened, were permitted to enter. The occupants of the cabin were petitioner and one Hafti. One of them admitted possession of the automobile which the officers were then permitted to search. In plain view on the back seat, they discovered a box, to which the sales tag was still attached, containing a blender. At this point, petitioner and his companion were arrested.

They reached police headquarters in the early evening hours of Thursday, September 13, 1963. After being booked, fingerprinted, and put in a cell, petitioner was interrogated intermittently over the next few days, but was not threatened, coerced, or maltreated. At no time did he ask to see an attorney, though he was neither offered an opportunity to contact one nor advised of his right to remain silent. Petitioner did, however, admit stealing the blender and a television set from Southland Hardware Store, an offense which the police knew nothing about until these inculpatory admissions were made. For that offense, petitioner was indicted, tried, and convicted. Evidence that petitioner had made these incriminating admissions was drawn from the lips of Officers McWilliams and Kimble who, in their role as members of the Houston Police Department, interrogated the petitioner on September 14, 1963.

■ Petitioner is not entitled to relief by virtue of Escobedo v. Illinois, *su-* *pra,* standing alone.[1] While there is language in Calloway v. Wainwright, 409 F.2d 59 (5th Cir. 1969), that *Escobedo,* supra, applies even though the accused does not request an attorney, those doubts must be resolved in light of what was implied in Texas v. Payton, *supra,* and held in Sellars v. Beto, 430 F.2d 1150 (5th Cir. 1970), *i. e.,* that "*Escobedo* protects the right to counsel only when counsel is requested." *See* 430 F. 2d 1154. The failure of the police to warn petitioner of his right to remain silent does not vitiate his conviction under *Escobedo, supra.* Texas v. Payton, *supra.*

■ Neither can it be said that the admissions are involuntary when the totality of the circumstances are taken into consideration. Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

In *Clewis, supra,* there were several criteria used in determining the voluntariness of the petitioner's confession, among these the fact that he was not made cognizant of his rights, that he was arrested without probable cause following which he was interrogated intermittently for 38 hours despite the Texas rule that an accused be taken before a magistrate "immediately," [2] and that his faculties were impaired by inadequate sleep and food, sickness, and long subjection to police custody with little or no contact with anyone other than the police. Although there was some pressure upon petitioner to make a statement, the evidence as a whole indicates that he received adequate care while in custody. He was never interrogated for more than two hours at a time. No

---

1. Petitioner's conviction took place at a time after the decision in Escobedo v. Illinois, *supra* (June 22, 1964), but prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966). Thus, the former, but not the latter, governs. *See* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

2. Texas Code Crim.Proc., Art. 217 (1925); now substantially revised in the respect that the accused party must be taken before the magistrate "without unnecessary delay," Texas Code Crim. Proc., Art. 14.06, as amended. This language is also found in Rule 5(a), Fed.R. Crim.Proc.

showing has been made that he was sick or under the influence of narcotics or that he was deprived of food, water, or sleep.

■ Petitioner's next contention is that he was arrested without probable cause. Where an arrest is, as in this instance, made without a warrant, the requirements as to the sufficiency of the information before the officer may act are surely not less stringent than where an arrest warrant is obtained. "Otherwise, a principle incentive now existing for the procurement of arrest warrants would be destroyed." Wong Sun v. United States, 371 U.S. 471, at pp. 479–480, 83 S.Ct. 407, at p. 413, 9 L.Ed.2d 441 (1963). But whether the arrest is with or without a warrant, "[i]t is basic that an arrest with or without a warrant must stand upon firmer ground that mere suspicion, * * * though the arresting officer need not have in hand evidence which would suffice to convict. * * * The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice.' * * * " *Id.* at 479, 83 S.Ct. at 413. That fundamental requirement of probable cause turns upon whether the facts and circumstances, both within the knowledge of the arresting officers and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man that the petitioner had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L. Ed.2d 142 (1964). The quantum of information that constitutes probable cause is not absolute, but it must be measured by the facts of each particular case. Wong Sun v. United States, *supra;* Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). *See also* Andrews v. Sheriff of Harris County, C.A. 69–H–281 (S.D.Tex.1970).

No discussion of the law of illegal arrest would be complete without an examination of one of the more recent Supreme Court excursions into the fourth amendment area. In Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, (March 29, 1971), the sheriff of a sparsely populated Wyoming county swore to a complaint charging petitioner and another with breaking and entering a business establishment in his county. The only basis for the complaint was the tip of an unidentified informant, but an arrest warrant was nevertheless issued by a justice of the peace. Subsequently, the sheriff who was knowledgeable of the description of the petitioner and his cohort and the car they were driving broadcasted this information over a statewide police radio. Petitioner was apprehended in another locality by police officers who acted upon the message. The Supreme Court held that the complaint alone could not support the independent judgment of a disinterested magistrate and that probable cause did not materialize from the air waves over which the petitioner's description was broadcast. The decision in *Whiteley, supra,* should be compared with Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). These cases make it clear that "where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding or an arrest that could not adequately be supported by the tip alone. * * * But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in Draper itself were in the process of committing the felony." *Whiteley, supra,* 91 S.Ct. p. 1036. In *Draper, supra,* a finding of probable cause was upheld. An informant, whose reliability had been previously tested, told officers that a man whose description was given in detail would at a particular time and place be in possession of narcotics. The arrest was made without a warrant when an

officer went to that place and at that time saw a man fitting precisely the description provided by the informant. In *Spinelli, supra,* a finding of probable cause for a search warrant was vacated. There, the affidavit simply recited that a reliable informant had said petitioner was disseminating wagering information in addition to the results of several days' surveillance of petitioner's activities which were innocuous in themselves. *Draper, supra,* was distinguished in the *Spinelli* opinion, *supra,* on the lack of support for the informer's tip in the latter-mentioned case and, in addition, the lack of detail in the tip itself. *Whiteley, supra,* is consistent with both of these cases. First, the informant's tip in *Whiteley, supra,* was conclusory as in *Spinelli, supra,* and unlike *Draper, supra,* where the informant provided pertinent information as to when and where the crime would be committed. Second, it must be observed that in *Draper, supra,* the informant provided the petitioner's description while in *Whiteley, supra,* there was nothing offered by the informant which would indicate that he was telling the truth.

When the authorities discussed at length above are compared with the circumstances in this instance, it must be found that the instant case bears more resemblance to *Draper, supra,* than to *Spinelli, supra,* and *Whiteley, supra.* Here, the police knew from the information provided by an eyewitness that a black and white 1956 Buick, license number TP 2510, had been used to commit the felony theft which the officers were investigating. They also knew from an unidentified source that the car could be found at the Blue Top Courts. There could only be one car in existence that could fit that precise description. The officers found it at the Blue Top Courts as the informant said they would. The investigating officers were men with many years experience in investigating crimes. The blender box in open view in the back seat of the car with the sales tag still attached indicated to them that it was stolen. At that point, the arrest was made, and "[w]hen judged in accordance with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act' * * *," the arrest and subsequent search was reasonable and valid under the Fourth Amendment. Hill v. California, 401 U.S. 1106, 91 S.Ct. 1106, 28 L.Ed.2d 484 (April 5, 1971). The arrest of petitioner and his companion was not so much on the basis of the word of an unidentified informant, but was instead the result of a successful pursuit of the leads which the police uncovered in the course of their investigation. Petitioner has pointed to no authority, and the court perceives that none exists, which requires that an arrest, the product of competent police investigation, must be nullified as violative of the Fourth Amendment.

It follows that the application for a writ of habeas corpus must be denied; it is so ordered.

The clerk of this court shall file this Memorandum and Order and shall forward true copies to counsel of record. This Memorandum and Order shall constitute this court's findings of fact and conclusions of law.

### Final Judgment

In accordance with this court's Memorandum and Order entered on this date and for the reasons stated therein, it is ordered, adjudged, and decreed that the petition for a writ of habeas corpus be, and the same is hereby, denied.