**STATE of Missouri, Respondent,**

v.

**Sammy D. STARK et al., Appellants.**

**No. 57441.**

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1973.

Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 10, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Duncan & Russell, Kansas City, for appellants.

STOCKARD, Commissioner.

Appellants have appealed prior to January 1, 1972 from the judgment entered pursuant to jury verdict in their consolidated trial wherein they were found guilty of stealing in excess of $50.00 and each was sentenced to imprisonment for a term of three years.

Police Officer Arthur Hopper was "staked out" at the Kendallwood Apartment Complex in Gladstone, Missouri because there had been problems in the area including automobile thefts, vandalism, and burglaries. About one o'clock in the morning Officer Hopper saw a pickup truck bearing Kansas license plates with three occupants enter the complex area. A few minutes later the truck, still having three occupants, left the area. Officer Hopper decided that he should "check this truck." He called Officer Cox by radio who subsequently stopped the truck by use of a flashing light. When the officer approached the truck he saw a motorcycle lying on its side in the bed of the truck, and he noticed that it "appeared exactly like" a motorcycle which belonged to James Hall, a Kansas City police officer who lived in the Kendallwood Apartments. The Officer then asked appellant Thomas J. Gabriel, the operator of the truck, for his driver's license, and he also asked him to whom the truck and the motorcycle belonged. Gabriel stated that the truck belonged to him, that the motorcycle belonged to a person by the name of Mike

Jackson, and that he was returning the motorcycle after trying to do some repairs on it. Gabriel also stated that Mike Jackson lived in apartment 5B in the Kendallwood Apartments, but Officer Cox was familiar with the numbering there and knew that there was no apartment by that number. The officer then asked if he could take a closer look at the motorcycle, and Gabriel said, "sure" and opened the tailgate of the truck. Corporal Fields of the Gladstone Police Department arrived at the scene, and after an unsuccessful attempt to locate James Hall, appellants were placed under arrest for "auto" theft.

The motorcycle belonged to James Hall, and it had been stolen that evening from the place where it was parked in the Kendallwood Apartment complex.

Appellants assign as error the court's refusal to suppress all evidence pertaining to the motorcycle. They contend that such evidence was the result of an unlawful arrest and of an unlawful search and seizure.

▇ We first note that there was no arrest of appellants following which there occurred a search of the truck and the seizure of the stolen motorcycle. Instead, there occurred a stopping of the truck for investigation purposes, and the police officers then saw in plain view in the bed of the truck a motorcycle which they had reasonable grounds to believe had been stolen. There occurred no search, and the first and only arrest was for the suspected theft of the motorcycle which resulted from what the officers saw in plain view, and not as the result of a search incident to an arrest.

▇ Appellants cite United States v. Nicholas, 448 F.2d 622 (8th Cir. 1971) as "directly and precisely in point." It was there held that under the circumstances of that case the action of a police officer in stopping an automobile was "unjustified in its inception," and therefore a *subsequent search* of the automobile, which revealed stolen property, was an unreasonable search. But, as noted, in this case the motorcycle was not discovered as the result of a search. Also, we are of the opinion that the stopping of the truck for a routine investigation was justified under the circumstances.

In Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it was stated that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purposes of investigating possibly criminal behavior even though there was no probable cause to make an arrest," and in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L. Ed.2d 612 (1972), it was stated: "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

The facts and circumstances of this case clearly establish that the police officers were entitled to stop the pickup truck for the purposes of investigation. The area being observed by Officer Hopper was one where there had been problems involving automobile thefts, vandalism and burglaries. It was an apartment area, and the vehicle which the officer saw enter the area was a pickup truck, not a passenger vehicle. The time was almost one o'clock in the morning, not the time for deliveries to be made by truck. Also the truck had three occupants when it entered and it had three occupants when it left. These circumstances, to any but the extremely naive, would be highly suspicious, and good police work called for the officer to stop the truck and to make inquiry concerning the activities of the occupants of the truck. The protection of the Fourth Amendment "does not require a policeman * * * to simply shrug his shoulders and allow a crime to occur or a criminal to escape." Adams v. Williams, supra. As stated in State v. Rankin, 477 S.W.2d 72 (Mo.1972), "It is clear that an officer has a right to stop an automobile to make a routine check

**264**

for an operator's license. * * * And where officers entertain a reasonable suspicion not amounting to probable cause to believe that criminal activity may be occurring they may stop the suspected person, identify themselves, require the suspect to identify himself, and make reasonable inquiries concerning his activities, without being adjudged to have made a formal arrest." It was in the course of such a temporary and proper investigatory detention that the officers saw in plain view a motorcycle which they had reasonable grounds to believe was stolen. The officers then had reason to believe that a crime was being committed in their presence, and it was not until then that appellants were placed under arrest. We find no merit to appellants' contention.

Appellants next assert that the court erred in failing to suppress all evidence concerning the motorcycle because the police were without authority to stop the vehicle outside the limits of Gladstone, Missouri. When Officer Cox turned on his flashing lights the pickup truck was in the City of Gladstone, but when the truck came to a stop it was in Kansas City.

This contention was not presented in the motion to suppress evidence, and it was not mentioned in the motion for new trial, and for that reason it is not preserved for appellate review. State v. Hammonds, 459 S.W.2d 365 (Mo.1970). However, if properly preserved the contention would be without merit.

First, the fact that after Officer Cox signaled for the pickup truck to stop it was then driven across the city limits of Gladstone would not result in the stopping of the truck being "unjustified in its inception" so as to preclude the officers from testifying as to what they saw in plain view.

Second, if the police officers had no authority as police officers outside the city limits, they then acted as private individuals. As such they could testify as to what

they saw. The constitutional protection which appellants attempt to invoke applies only to government action. State v. Brown, 391 S.W.2d 903 (Mo.1965); State v. Overby, 432 S.W.2d 277 (Mo.1968).

The judgment as to each appellant is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.