STATE of Missouri, Respondent,

v.

Kenneth C. DUDLEY, Appellant.

No. KCD 29031.

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1977.

Motion for Rehearing and/or Transfer Denied Jan. 30, 1978.

Application to Transfer Denied March 13, 1978.

Ann K. Fleming, Columbia, for appellant.

John D. Ashcroft, Atty. Gen., Frank Murphy, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

On this appeal from his conviction for possession of marijuana, defendant asserts error: (1) in the admission into evidence of the marijuana obtained by a search in alleged violation of his rights under the Fourth Amendment (applicable to the States through the Fourteenth Amendment) of the Federal Constitution and Article I, section 15, of the Missouri Constitution; and (2) in the admission into evidence of a statement obtained from the defendant after the search. We reverse.

On August 24, 1974, at about 3 A.M., Officer Charles L. Muldoon of the Macon Police Department was alone on routine patrol car duty when he saw two young men by a telephone booth at the junction of Highways 63 and 36 in the City of Macon, Missouri. Both had long hair and were attired in "hippie" clothes. Muldoon drove his patrol car onto a driveway to within one or two feet of the two young men who walked away from two suitcases and approached the incoming vehicle. Muldoon asked the boys where they were going, to which they responded that they had come by bus from Oklahoma City and were waiting for a ride to Kirksville. Muldoon then asked for identification. Dudley produced a Missouri Driver's License and Ramos produced a California Driver's License. At this time, Muldoon observed that Dudley was very talkative and nervous, and that his eyes were inflamed. After looking over the identification, Muldoon asked how much "grass" the young men were carrying. Defendant responded "he didn't fool with that stuff." Muldoon then got out of the police car and walked over to the two suitcases which were 10 to 12 feet from the car. One suitcase was in an upright position and one was lying flat. Muldoon tapped or kicked the suitcase which was lying flat, and at that time according to his testimony he detected "a faint smell of marijuana" coming from the suitcase. He asked the boys again, "How much stuff are you guys carrying?" Again, the answer was "that they did not fool with that."

Muldoon then asked the boys to accompany him to the police station. The boys were reluctant to do so on the ground they would miss their ride to Kirksville. Muldoon then ordered the boys to pick up their gear and put it in the car and come with him to the police station. The two suitcases were placed in the back seat directly behind Muldoon in the driver's seat, defendant got in back next to the suitcases, and Ramos sat in front next to Muldoon. Muldoon testified that the purpose for going to the police station was to see if the young men would open up their suitcases willingly and prove that they weren't carrying anything.

As they were driving to the police station, Muldoon got a "whiff" of marijuana. At the police station, Officer Hewitt was at the front door. Muldoon got out of the car first, followed by the two young men. Ramos started sauntering away toward an alley, but Muldoon peremptorily ordered him back and into the station. Dudley and

Ramos at Muldoon's direction carried the suitcases into the police station, placed them on the floor, and took seats in the main room of the police station. Shortly thereafter Officer Muldoon asked the young men to open the suitcases. Ramos laid one suitcase upon the counter and opened up that suitcase. Muldoon and Hewitt went through the suitcase and found that it contained clothing. At that point, the officers decided to search each of the young men and found a three-inch knife on the person of Ramos.

Dudley and Ramos were then asked to put the other suitcase on the counter and to open it, which they both refused to do. Accordingly, Muldoon placed the suitcase on the counter. As Muldoon placed the suitcase on the counter, Dudley bolted and ran through the front door of the police station. Muldoon pursued him and shouted, "Halt or I will fire." Dudley stopped and Muldoon pulled his revolver from its holster, handcuffed appellant and brought him back into the police station.

After a short interval, Hewitt took Ramos into another room for interrogation, and the handcuffs were removed from defendant. Muldoon told Dudley that he was reasonably sure that this suitcase in question contained marijuana, and that he was going to get into it. Because the suitcase had three locks, Dudley and Ramos were both asked if they had a key to the suitcase, but they stated that they had no knowledge of a key. Muldoon then pulled out his revolver and threatened to shoot open the suitcase. When that bluff failed, he took out Ramos' knife and threatened to cut the suitcase open. Then Muldoon went to the next room for tools, and with a pair of pliers he fashioned a wire clip around a screwdriver into a rough lock-pick. With this he opened the lock on one side, which enabled him to look inside and see marijuana in kilo bricks.

Muldoon testified that after opening the suitcase and discovering the marijuana, he read Dudley and Ramos the *Miranda* warnings and informed them that they were formally under arrest. The next morning, Sgt. Burnett of the State Highway Patrol came in, ran a test on the marijuana, gave defendant a *Miranda* warning, and took a tape recorded statement from defendant in which he gave the details on how he had acquired and transported the 32 pounds of marijuana found by the search and seizure just described.

▆ In justification of the search of the suitcase containing marijuana, the State argues that the search was incidental to a lawful arrest. Defendant challenges that on two bases: (1) he argues that the warrantless arrest was not lawful because it was not based upon probable cause; (2) he further argues that the search went beyond the limits of what is permissible incident to an arrest. It is unnecessary to decide whether the arrest itself was lawful. Even assuming that it was, defendant's second argument must be sustained.

The permissible scope of a search under the circumstances of this case is governed by the recent opinion of the United States Supreme Court in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In that case federal officers received reliable information that defendants were enroute by train to Boston transporting marijuana. When the train arrived in Boston, federal agents were on hand accompanied by a police dog trained to detect marijuana. As the defendants claimed their luggage, including a foot locker, the dog signaled the presence of contraband. The agents waited until the foot locker was placed in the trunk of defendants' car and then arrested them and took them to the Federal Building. At the Federal Building, the agents opened the foot locker and recovered the marijuana. The Supreme Court held the search to be illegal, thereby excluding the marijuana from admissibility into evidence. The court laid down the governing principle as follows:

"Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the

property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."

Under the facts here, that test is met. From the beginning when Officer Muldoon confronted them on the street, defendant and his companion were submissive with respect to the suitcases. They moved those suitcases into and out of the police car obediently at the command of Muldoon. At least from the time that Muldoon and the two arrestees reached the police station, where Muldoon enlisted the help of Officer Hewitt, those police officers were in complete and exclusive control of the suitcases.

The police control of the whole situation and in particular of the suitcase last to be opened, is best illustrated by the events after defendant attempted to flee and was brought back into the station house. After failing to obtain a key to the locked suitcase, Muldoon drew his 357 Magnum with a 6-inch barrel and threatened to shoot the suitcase open. At that time, with a gun in his hand, Muldoon knew that the two young men were unarmed because they had just been searched for weapons. Then, when Muldoon's first bluff failed to produce a key, he pulled out the knife which he had previously taken from Ramos and threatened to cut the suitcase open. When that bluff also failed, Muldoon went to the next room to look for tools and then proceeded to manufacture a lock-pick. During all of these maneuvers, there were two officers on hand both armed, dealing with two young arrestees both known to be unarmed and neither of whom had made the slightest move toward even attempting to get into the triple-locked suitcase which was sturdily resisting Muldoon's efforts to open it.

Muldoon could have just as easily, and in fact more easily, put away the second suitcase in some safe place completely separated from the arrestees until such time as he had obtained a search warrant from a magistrate. That Muldoon chose not to do so was a matter of his own free choice which cannot lessen the fact that he was in full control of the suitcase and of what action to take with respect to it.

■ The State cites authority for the proposition that "searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." Expressions to that effect found in cases decided prior to *Chadwick* must now be regarded as overly broad and lacking in sufficient refinement. *Chadwick* adopts a new principle which distinguishes between searches of the arrestee's person as contrasted to searches of other possessions such as luggage which may be within the arrestee's immediate control. Searches of the person need not be confined to the place and time of the arrest but may be delayed to a subsequent time and place; but searches of other possessions incident to an arrest can no longer be conducted after the point when the officers have reduced those possessions to their exclusive control. *United States v. Berry*, 560 F.2d 861, l.c. 864 (7th Cir. 1977). The suitcase here in question comes within the second category of items not on defendant's person, and therefore falls within the tighter limitation of *Chadwick*.

Nor can the State find support for its position in *State v. Brasel*, 538 S.W.2d 325 (Mo.banc 1976). The dominant difference between *Brasel* and the present case lies in the fact that the search permitted in *Brasel* occurred at the time and place of the arrest under circumstances which the court found made the attache case there involved within the immediate control of the arrestee.

■ Inasmuch as the search here must be held invalid, the statement subsequently taken from defendant falls with it. Prior to the opening of the suitcase containing the marijuana, defendant had steadfastly denied any wrongdoing. His denials were not broken down and his statement was not obtained until after the illegal search and seizure. The prosecution wholly failed to sustain its burden of showing any break in causation between the illegal search and the confession, and the evidence as a whole plainly reveals that the search was the proximate cause of the confession. The statement must therefore be excluded as

fruit of the poisoned tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Because of the erroneous admission of the evidence mentioned, this conviction must be reversed. After remand, unless the prosecution is prepared to offer evidence incriminating defendant other than and independent of the marijuana seized by Muldoon and the statement taken by Burnett, this case should be dismissed in the trial court.

All concur.